IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LYDIA M. PEREZ-FIGUEROA,

     Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

     Defendant.

Civil No. 10-1900 (BJM)

## OPINION AND ORDER

Plaintiff Lydia M. Perez-Figueroa ("Perez") filed a complaint seeking judicial review of the decision of the defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), finding that Figueroa is not entitled to disability benefits under sections 216(i)(g) and 223(d) of the Social Security Act, 42 U.S.C § 416(i) and 423. (Docket No. 2). Perez asks for judgment to be reversed and an order awarding disability benefits be entered, and has filed a memorandum of law in support of her position. (Docket No. 15). The Commissioner answered the complaint (Docket No. 14) and filed a memorandum in support of his decision. (Docket No. 16). This case is before me on the consent of the parties (Docket No. 6). After careful review of the administrative record and the briefs on file, the Commissioner's decision is affirmed.

## LEGAL STANDARD

The court's review is limited to determining whether the Administrative Law Judge ("ALJ") employed the proper legal standards and focused facts upon the proper quantum of evidence. Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Da Rosa v. Secretary of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986). The court "must affirm the [Commissioner's] resolution, even if

**Lydia M. Perez-Figueroa v. Michael J. Astrue, Commissioner of Social Security**          Page 2
Civil No. 10-1900 (BJM)

the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagán v. Secretary of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these may serve as supplementary evidence for the ALJ to consider in conjunction with the examining physician's reports. Irizarry -Sanchez v. Comm'r of Soc. Sec., 253 F.Supp. 2d 216, 219 (D.P.R. 2003).  The burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act ("Act").  See Bowen v. Yuckert, 482 U.S. 137, 146-147, n.5 (1987).  A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[1]  42 U.S.C. § 423(d)(2)(A).  In determining whether a claimant is disabled, all of the evidence in the record must be considered.  20 C.F.R. § 404.1520(a)(3).

A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled.  20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Secretary of Health and Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).  In step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If she is, disability benefits are denied.  20 C.F.R. § 404.1520(b).  If she is not, the ALJ proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is

---

[1]The phrase "work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

denied. However, if the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in which it is determined whether the claimant has an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from the work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process calls for a determination of whether the claimant is able to perform other work in the national economy in view of her residual functional capacity ("RFC"), as well as age, education, and work experience. If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520)f).

The claimant has the burden, under steps one through four, of proving that she cannot return to her former employment because of the alleged disability. Santiago v. Sec'y of Health and Human Servs., 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform. Ortiz v. Sec'y of Health and Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).

## FACTUAL AND PROCEDURAL BACKGROUND

Perez was born on June 26, 1962. (Transcript ["Tr."] 18, 49, 333). She has a high school education and worked as a secretary and office clerk for most of her adult life. (Tr. 18-19, 112, 128, 180). She injured her back in 1999 and claims to have been disabled since August 1, 2004, due to a back condition, depression, headaches, and a gastrointestinal condition. (Tr. 17, 162, 183, 222, 229). In January of 2006 or 2007, Perez began seeing Dr. Soriano for psychological treatment, and

in January of 2007 she began seeing Dr. Francisco Lubriel for problems with her back, heart, and stomach.[2] (Tr. 156) Progress notes from January 17, 2006, showed that while she was anxious, with poor judgment and insight, she was also coherent, had adequate affect, and was oriented in three spheres (person, place and time); Perez's diagnostic code was documented as 296.3 and her Global Assessment of Functioning ("GAF") rating was 60.[3] (Tr. 175).

On February 16, 2006, Disability Determination Services ("DDS") referred Perez to Dr. Elvira Giambartolomei for a psychological evaluation. (Tr. 179). During the interview, Perez said that her daily activities included taking her daughter to school, watching television, reading, and going to church. (Tr. 180). Dr. Giambartolomei described Perez's mood as dysphoric, with depressive affect and anhedonia; she observed that Perez displayed average intellectual capacity and acceptable judgment and insight. (Tr. 181). At the time, Perez was taking Elavil, Klonopin, and Prozac. (Tr. 180). Dr. Giambartolomei concluded that while Perez exhibited psychomotor retardation, she was oriented to person, place, and time, and noted that Perez was capable of handling her funds. (Id)

On March 3, 2006, Doctor Oscar Benitez, a neurologist working with DDS, described Perez as alert, well-oriented, and having no evidence of a neurological deficit. (Tr. 184). Perez's radiology results from March 8, 2006 showed no abnormalities or deformities in Perez's spine or vertebral bodies or her ability to function normally. (Tr. 190). On March 28, 2006, Dr. Luis Sanchez conducted a psychiatric review on Perez. (Tr. 192). Although the results showed non-severe mental

---

[2] There are conflicting accounts on pages 156 and 163 as to when Perez began seeing Dr. Soriano.

[3] The GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ["DSM-IV-TR"], quoted in Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004). It "considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV-TR at 34 (brackets omitted), quoted in Echandy-Caraballo v. Astrue, 2008 WL 910059 at *4 n.7 (D.R.I. Mar. 31, 2008). A GAF score between 61–70 is indicative of "[some] mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR at 34 (emphasis omitted), quoted in Everson v. Astrue, 2011 WL 1226051 at *7 n.6 (D. Me. Mar. 29, 2011).

impairments, she was diagnosed with depressive disorder due to musculoskeletal condition.  (Tr.
192, 195).  At that appointment, Dr. Sanchez concluded that the degree of limitation in Perez's
ability to conduct activities of daily living was mild, and that her mental condition was not severe.
(Tr. 202, 206).

On April 18, 2006, Dr. Gilbert Fragoso, a non-examining DDS physician, submitted a
Physical Residual Functional Capacity Assessment (PRFCA) of Perez.  (Tr. 207-214).  He diagnosed
her with DDD L5/S1, meaning Perez suffered from a depressive disorder, and her physical
capabilities fell in the category of "5," which limited her movements to occasionally lifting up to 50
pounds, frequently lifting up to 25 pounds, and standing and/or walking for up to six hours (Tr. 208).
He also diagnosed Perez with Cervical Spondylosis.  (Tr. 207).  She did not have any postural,
manipulative, visual, communicative, or environmental  limitations.  (Tr. 209-211).

On March 19, 2007, Perez met with Dr. Luis Rojas, complying with  a DDS referral, for a
psychiatric evaluation.  (Tr. 222).  She reported insomnia and feelings of isolation, depression, and
anxiety.  (Id).  She also said that her daily activities included household chores, shopping, watching
television, and reading.  (Tr. 223).  Rojas concluded that she was anxious and depressed, but
cooperative; her thoughts were organized, logical and coherent, she was oriented in person, place
and time, and her social judgment was adequate.  (Tr. 224-225).  He diagnosed her with Major
Depressive Disorder, with anxiety.  (Tr. 225).  Five days later, on March 23, 2007, she met with Dr.
Luis Sanchez Longo, who noted that her coordination and locomotive skills were normal, her
Romberg test was negative, and that she suffered from cervical and lumbar strain.  (Tr. 231).

On May 10, 2007, Dr. Carmen Pineiro reviewed Perez's medical records and completed a
mental RFCA.  (Tr. 256).  He concluded that she was moderately limited in her ability to understand
and remember detailed instructions, carry out short and simple instructions, and maintain attention
and concentration for extended periods.  (Id).  The next day Dr. Vicente Sanchez completed a
PRFCA on Perez and concluded that Perez's condition had not worsened; she was still able to lift
25 pounds, stand or walk for about six hours a day, with few postural, and no manipulative, visual,
communicative or environmental limitations. (Tr. 263-265).

Progress reports provided by American Psych Systems ("APS") Clinics, Perez's healthcare provider, showed that from February 2006 through January 2008, Perez was diagnosed with Major Depression but she remained alert, logical, coherent, oriented, and had adequate affect. (Tr. 273-315). Her examining physician, Dr. Hilda Rivera, noted that Perez generally improved during that time period, and especially when she took her medication. (Id).

On November 28, 2005, Perez filed for disability benefits. (Tr. 13). Her disability claim was denied on April 21, 2006, and upon reconsideration on May 21, 2007. (Id). Perez stopped working on May 24, 2004, (Tr. 61, 339) and on December 31, 2006, her Disability Insurance Benefits ("DIB") expired. (Tr. 15, 340). At that time, she was forty-four years old (Tr. 18, 222, 333). Perez appeared and testified at a hearing before an ALJ on May 6, 2008. (Tr. 330-364).

On February 23, 2009, the ALJ issued his opinion. (Tr. 13-20). Applying the five-step process detailed in 20 C.F.R. § 404.1520, the ALJ found that Perez was not disabled as of her date last insured, December 31, 2006. (Tr. 16). Specifically, the ALJ found that (1) Perez was not engaged in substantial gainful activity; (2) Perez suffered from chronic cervical and dorsal pain, which were severe impairments, and a mental limitation that was a non-severe impairment; (3) Perez did not have an impairment which met or was medically equal to one of the listed impairments in 20 C.F.R. Part 404, subpt. P, appendix 1; (4) Perez was unable to return to her previous work which required her to understand and follow complex instructions; but (5) Perez had acquired skills from her past work as a secretary and office clerk that were transferable to other occupations in the national economy. (Tr. 15-19).

The ALJ found that Perez had a medically determinable mental impairment of affective disorder, but it did not cause a significant limitation on her ability to perform basic mental work activities, and was therefore non-severe. (Tr. 15). In coming to this conclusion, the ALJ noted that Perez performed household chores, went shopping and to church, watched television for an average of three hours a day, and had not been hospitalized for mental problems. (Tr. 16).

**Lydia M. Perez-Figueroa v. Michael J. Astrue, Commissioner of Social Security**          Page 7
Civil No. 10-1900 (BJM)

Regarding her physical condition, Perez testified that she could not hold a gallon of milk without dropping it. (Tr. 340). She also testified that she could not sit or stand for more than thirty minutes, and that she felt constant pain in her cervical and lumbar area. (Tr. 340-41). The ALJ took into account her testimony, along with the evaluations of Dr. Giambartolomei, Dr. Benitez, and Dr. Sanchez. (Tr. 17-18). Dr. Giambartolomei diagnosed Perez with major depression recurrent but described her as logical, coherent, oriented and alert, with good recent and short term memory and good judgment. (Tr. 17). Dr. Benitez found no atrophy or weakness in Perez's extremities, no cervical or lumbar spasms, and no evidence of any neurological deficit. (Tr. 17). He concluded that Perez could sit, stand, walk, carry, lift and handle objects, hear, speak, and travel. (Id). Dr. Sanchez described Perez's gait as normal. He noted that she had mild dorsal muscle spasm and trapezium pain with moderate paravertebral lumbar muscle spasm. He opined that Perez's main problem was a mental condition. (Tr. 18). The ALJ considered Perez's back disorder under listing 1.04 of the Act, and found that she did not have the required neurological deficits of the listing; she had no sensory or motor loss, and no atrophy. (Tr. 16).

At the hearing, the ALJ consulted a vocational expert ("VE"), Carmen Valladares. (Tr. 332). She testified that considering Perez's past work and current physical and mental abilities, Perez could find light, non-skilled work within the clerical field because although Perez could not comprehend complex instructions, she could follow simple, detailed orders; she could occasionally climb stairways, bend, crawl, balance, and kneel down. (Tr. 353-356).

The ALJ decided that while Perez's medically determinable impairments could reasonably be expected to cause her alleged problems, Perez's testimony concerning the intensity, persistence and limiting effects of her symptoms was not entirely credible because it was inconsistent with the RFCA and the doctors' findings. (Tr. 18). Accordingly, the ALJ determined that Perez was not disabled within the meaning of 20 C.F.R. 404.1520). (Tr. 18).

## DISCUSSION

The analysis in this case centers on the ALJ's determinations at step two of the sequential evaluation process that Perez's mental impairment was not severe, and at step five that based on Perez's RFC, age, education, and relevant work experience, work existed in the national economy that she could perform, making her ineligible for disability insurance benefits under the Act.  The sole question before the court is whether these determinations were supported by substantial evidence.

In this appeal, Perez challenges the ALJ's determination that her psychological impairment was not severe and did not more than minimally impact her ability to work.  She argues specifically that (1) the ALJ failed to follow the special procedure specified in 20 C.F.R. § 404.1520(d)(1); (2) the ALJ erroneously disregarded her GAF rating of 60%; (3) the ALJ was not entitled to rate her mental impairment as "not severe" without the help of expert medical testimony; and (4) the hypothetical scenario posed to the VE did not encompass Perez's mental limitations.  (Docket No. 15, p. 13-16).

When evaluating mental impairments for persons age 18 and over using the adult listings of impairments, the Commissioner must follow a special review technique set forth in 20 C.F.R. § 404.1520a.  When a mental impairment exists, failure to follow the technique constitutes legal error which requires remand.  See Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005).  The Commissioner must first evaluate the claimant's signs, symptoms, and laboratory findings to determine whether a medically determinable impairment exists.  20 C.F.R. § 404.1520a(b)(1).

If a medically determinable mental impairment exists, the degree of functional limitation imposed by the mental impairment must be assessed.  At this step, the reviewer must make specific findings in four broad functional categories: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  A mental impairment may be considered "not severe" when the Commissioner

rates the claimant's degree of limitation in the first three functional areas as "none" or "mild," and "none" in the fourth area.  20 C.F.R. § 404.1520a(d)(1); see also Figueroa-Rodriguez v. Sec'y of Health and Human Servs., 845 F.2d 370, 372 (1st Cir. 1988).

Perez's first argument is that the ALJ erred when he did not find Perez severely mentally impaired based on the Psychiatric Review Technique Form outlined in 20 C.F.R. §§ 404.1520(d)(1) and 404.1520(d)(2).  (Docket No. 15, p. 13).  The pertinent section of this regulation states that in determining mental disability four functional areas should be evaluated.  20 C.F.R. § 404.1520(b)(3).  These areas are activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation.  (Id).  Section 404.1520(d)(1) goes on to explain that if the degree of limitation in the first three functional areas are rated as "none" or "mild," and "none" in the fourth area, then the impairment will be deemed not severe.

Perez contends that the ALJ erroneously failed to consider the fact that the Psychiatric Review Technique Form completed by Dr. Carmen Pineiro pronounced her moderately restricted in her activities of daily living (Docket No. 15, p. 12), her ability to accept instruction and respond appropriately to criticism from supervisors, and her ability to respond to changes in the work setting.  (Id., p. 14-15).  Perez argues that a moderate degree of limitation is equivalent to having a severe mental impairment.  (Id).

Where a medical opinion is inconsistent with other evidence, the ALJ may weigh all of the evidence in reaching a conclusion.  20 C.F.R. § 404.1527(c)(2).  Among other factors, an opinion may be given more or less weight depending on its supportability: "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion....we will evaluate the degree to which these opinions consider all of the pertinent in your claim, including opinions of treating and other examining sources." 20 C.F.R. § 404.1527(d)(3).  Another relevant factor is "the extent to which an acceptable medical source is familiar with the other information in [a claimant's] case record."  20 C.F.R. §§ 404.1527(d)(3), 404.1527(d)(6).  The resolution of conflicts in the medical evidence is reserved for

the Secretary to determine.  See Lizotte v. Sec'y of Health and Humand Servs. 654 F.2d 127, 130

(1st Cir. 1981); see also Torres Gutierrez v. Sec'y of Health, Education and Welfare, 572 F. 2d 7,

8 (1st Cir. 1978) and Gonzalez v. Richardson, 455 F.2d 953-54 (1st Cir. 1972).

The ALJ properly found that Dr. Pineiro's assessment was contrary to the medical

conclusions of other physicians on the record.  (Tr. 17-18).  In reaching this decision, the ALJ

considered the opinions of Doctors Giambartolomei and Sanchez and APS progress reports from

February 2006 through January 2008.  (Id).  Dr. Giambartolomei noted that Perez displayed average

intellectual capacity and adequate judgment and insight (Tr. 181), while Dr. Sanchez concluded that

Perez was only mildly limited in her ability to conduct activities of daily living, and that her mental

condition was not severe.  (Tr. 202, 206).  In addition, the mental RFC assessment Perez cites in

arguing that she is severely mentally disabled states that she "can understand, remember and carry

out short, simple and detailed instructions; maintain attention and concentration for at least two

hours, and respond to changes in the work setting."  (Tr. 258).

APS's progress notes on Perez from February 2006 through January 2008 generally described

her as logical, coherent, and oriented, with adequate judgment and insight.  (Tr. 273-315).  In a 2006

interview with Dr. Giambartolomei, Perez stated that her daily activities included taking her daughter

to school, watching television, reading and going to church.  (Tr. 180).  The reports from Doctors

Giambartolomei and Sanchez, Perez's statements about the amount of daily activities she

independently engaged in, and the mental RFC assessment completed by Dr. Carmen Pineiro serve

as substantial evidence for the ALJ's conclusion that Perez was only mildly mentally impaired.

Second, Perez insists that the ALJ ignored objective medical evidence presented in the form

of her GAF rating.  (Docket No. 15, p. 15).  Perez cites several evaluations in which her GAF rating

is 60% as other instances where the ALJ disregards her moderate difficulty in functioning normally.

(Id).  However, "while a GAF score may be of considerable help to the ALJ in formulating the RFC,

it is not essential to the RFC's accuracy." Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). Furthermore, the GAF does not have a direct correlation to the severity requirements of the Social Security disability program. 65 F.R. 50746, 50764. In his decision, the ALJ acknowledges Perez's GAF score (Tr. 17, 18), but finds that it is outweighed by the majority of the medical evidence that supports his conclusion that Perez is only mildly mentally impaired. (Tr. 17-19).

Third, Perez argues that the ALJ's finding that she was not disabled violates 20 C.F.R. § 404.1521, subpt. P because the ALJ based his conclusion on his own medical opinion, and without the benefit of a medical expert. (Docket No. 15, p. 16). As a layperson, the ALJ cannot interpret raw medical evidence without the help of expert testimony or other assistance. See Berrios v. Secretary of Health and Human Servs., 796 F.2d 574, 576 (1st Cir. 1986). Determination of the severity of a mental impairment is initially entrusted to the agency's psychological consultant, 20 C.F.R. § 404.1520(a)(e)(1), who is a medical expert as defined by 20 C.F.R. § 405.5. The ALJ may only make commonsense judgments of functional capacity where the medical record would clearly suggest to a layperson little functional impairment. See Manso-Pizarro, 76 F.3d at 17. At the ALJ hearing level, the ALJ is responsible for weighing all the evidence (including the initial opinions of the agency's medical consultants, other medical evidence, and statements of the claimant), and for making findings of fact and conclusions of law. See 20 C.F.R. §§ 404.1512(b), 404.1527(f)(2). The use of a medical advisor is a matter left to the Secretary's discretion; nothing in the statute or regulations requires it. See Rodriguez Pagan, 819 F.2d at 11 (1st Cir. 1987). The ALJ's findings of fact, if based upon the proper quantum of evidence, are conclusive. See Nguyen 172 F.2d 574, 576 (1st Cir. 1986).

Perez's contention that the ALJ independently interpreted medical evidence is contrary to the record. Although no medical experts testified at the hearing, the ALJ referenced the reports and

opinions of Doctors Giambartolomei, Benitez, and Sanchez, which were written in layman's terms, as well as progress reports submitted by APS in accordance with 20 C.F.R. § 404.1527. (Tr. 17-18). The record shows that the ALJ relied on information from respective examining and non-examining physicians, and that his decision is supported by substantial evidence.

Fourth, Perez claims that the hypothetical questions the ALJ posed to the VE were irrelevant in determining that she was not disabled because they did not adequately account for the mental limitations she alleges are established in the record. (Docket No. 15, p. 16). This argument is unavailing because hypothetical questions to a VE need only contain the limitations that the ALJ finds credible. In order for a VE's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities. Arocho v. Secretary of Health and Human Servs., 670 F.2d 374 (1st Cir. 1982). Based on the medical reports of examining and non-examining physicians, her RFC assessments, and Perez's own statements about her ability to perform various activities on a daily basis, the ALJ determined that she was only mildly mentally disabled and therefore did not emphasize her mental impairments in his hypothetical questions. Because there is substantial evidence to support a finding that Perez's mental disability was non-severe, the hypothetical questions posed to the VE were appropriate.

Lastly, Perez contends that her testimony regarding the pain resulting from her impairments was sufficient to find that she was severely impaired because it was consistent with a condition that can reasonably be expected to produce her subjective pain. (Docket No. 15, p. 17). Where it has been determined that a claimant has an impairment that could reasonably be expected to produce the symptoms alleged, an ALJ may not disregard a claimant's statements about the intensity and persistence of symptoms or their effect on her ability to work merely because they are not substantiated by objective medical evidence. See 20 C.F.R. § 303.1529(c)(2). However, where objective medical evidence *does not* corroborate the claimant's subjective allegations of pain, the

ALJ may permissibly determine the testimony's credibility.  And if the ALJ cites specific grounds for disbelieving the claimant, his credibility determination is entitled to deference from a reviewing court.  See Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).  It remains the ALJ's responsibility to resolve conflicts in the evidence and to determine issues of credibility.  See Evangelista v. Secretary of Health and Human Servs., 826 F.2d 136, 141 (1st Cir. 1987).

Here, the ALJ noted that Perez's account of how much pain she experienced conflicted with her statements to various doctors that she took her daughter to school, shopped, read, watched television, and went to church on a daily basis.  (Tr. 15-18).  Considering medical records that consistently found Perez to be logical, coherent, and oriented in three spheres (Tr. 18), with no "objective evidence of neurological deficit" (Tr. 17), the ALJ's decision that Perez was not disabled was well substantiated.  By the same token, the ALJ's credibility determination is entitled to deference by this court.  Frustaglia, 829 F.2d at195.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of December, 2011.


                                              S/Bruce J. McGiverin
                                              BRUCE J. McGIVERIN
                                              United States Magistrate Judge